Filed 10/3/25  P. v. Fernandez CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>MATTHEW FERNANDEZ,<br><br>　　　Defendant and Appellant. | B336838<br><br>(Los Angeles County Super. Ct. No. BA496760) |

APPEAL from a judgment of the Superior Court of Los Angeles County, James R. Dabney, Judge.  Affirmed.

Richard Lennon and Jennifer Peabody, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Kenneth C. Byrne, Supervising Deputy Attorney General, and Julie A. Harris, Deputy Attorney General, for Plaintiff and Respondent.

Defendant and appellant Matthew Fernandez was convicted of willful, deliberate, and premeditated attempted murder after stabbing his girlfriend with a broken bottle. We are asked to decide whether the trial court admitted domestic violence propensity evidence without undertaking the required Evidence Code section 352 analysis of the probative value and prejudicial effect,[1] whether reversal is warranted for various instances of purported prosecutorial misconduct in closing argument, and whether the trial court abused its discretion in denying defendant's *Romero*[2] motion to strike prior "strike" crimes at sentencing.

## I. BACKGROUND

In July 2021, defendant was living in a shelter called LA Global Care. He resided in a building with about 12 other men—one of several buildings on the premises.

Defendant had been in a dating relationship with W.M. for about a year, and W.M. was visiting defendant in his room at the shelter. They were using methamphetamine and other drugs, and W.M. went to sleep when defendant took her phone and tried to start an argument with her.

At some point during the night or early the next morning, W.M. woke up and went to the bathroom. She felt sober and clear-headed. She locked the door, but defendant broke the lock and entered the bathroom. He asked whether she had called the police. W.M. "sarcastically" replied that she had (she could not

---

[1] Undesignated statutory references that follow are to the Evidence Code.

[2] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

have called because defendant had her phone).  Defendant said, "Well, I'm going to take our lives, kill myself and kill you."

Defendant removed a glass bottle from his sweater and broke it against the sink.  He used the broken bottle to cut his own neck, and he threw W.M. to the floor and used the bottle to cut her face and neck too.  W.M. tried to fight back and flee, but defendant blocked the bathroom door and threw her to the ground "a couple times" during the struggle.  W.M. estimated defendant stabbed her approximately 10 times, and she later counted at least 19 scars on her body that she sustained in the attack.

Unable to fend off defendant while he was on top of her holding the broken bottle, W.M. tried to stop the attack by telling defendant she loved him.  Defendant told her to kiss him, and she did.  Defendant then got off of W.M., and she left the bathroom after struggling with the door handle, which was slick with blood.

Around 5:00 a.m., a shelter supervisor and a staff member heard a colleague screaming and went to investigate.  The staff member called 911 and sat outside with W.M. while the supervisor and a colleague barred the bathroom door, with defendant still inside.  In addition to requesting aid for W.M., the staff member told the 911 operator that defendant was trying to kill himself.

Paramedics arrived and treated W.M.  She was transported to the hospital where she underwent surgery.  When Los Angeles Police Department officer Eric Darling arrived at the scene, he found defendant in the bathroom, "very bloody" and "in and out of consciousness."  Defendant had suffered multiple lacerations, including "one big open wound" to his neck.  Officer Darling treated the wounds, although defendant attempted to remove

3

gauze from one of his wounds while Officer Darling was treating him. Officer Darling believed defendant would have died if he and his colleagues had not stopped the bleeding.

The Los Angeles County District Attorney charged defendant in a one-count information with attempted murder—with the further allegation that the attempted murder was committed willfully, deliberately, and with premeditation. The information additionally alleged defendant personally inflicted great bodily injury on W.M. in circumstances involving domestic violence (Pen. Code, § 12022.7, subd. (e)) and defendant had sustained two prior Three Strikes law convictions (assault with a deadly weapon in 2014 and in 2020).

The prosecution's trial brief, filed just before trial began, argued the trial court should admit evidence of defendant's 2020 assault with a deadly weapon conviction—where the victim was his sister and the weapon was (also) a glass bottle—as domestic violence propensity evidence under section 1109. The brief quoted section 1109, including the statutory language that permits introduction of such evidence only if it is not inadmissible as more prejudicial than probative under section 352. The brief also quoted section 352 and argued the prior conviction was "extremely probative as another, extremely recent act of domestic violence," was not "more serious or inflammatory" than the offense to be tried, and would not "tend to confuse or mislead the jury" or "necessitate undue consumption of time."

As we later describe in more detail, proceedings were held during trial, outside the presence of the jury, to discuss the prior conviction's admissibility. The trial court ruled it would admit the evidence. During closing argument after the presentation of evidence, there were no objections on misconduct grounds and the

4

jury found defendant guilty of attempted murder.[3]  The jury also found true the allegations that the attempted murder was willful, deliberate, and premeditated and that defendant inflicted great bodily injury upon W.M.

At sentencing, defendant made a *Romero* motion requesting the trial court to strike defendant's prior "strike" crimes.  The trial court declined to strike the "strikes," but the court ruled it would strike the Penal Code section 12022.7, subdivision (e) great bodily injury enhancement in furtherance of justice.  The court accordingly sentenced defendant to 25 years to life in prison.

## II.  DISCUSSION

Defendant's argument that the trial court erred by not expressly weighing the probative value of his prior assault conviction against any undue prejudice—before the jury was informed of the conviction—is forfeited for failure to raise a contemporaneous objection.  On the substance of the trial court's evidentiary ruling, there was no abuse of discretion.  Any slight risk of prejudice did not come close to substantially outweighing the high probative value of the evidence demonstrating defendant's propensity to engage in domestic violence.  Insofar as defendant argues it was legal error to allow the prosecution to use the evidence not just to establish a general propensity to commit domestic violence crimes but to argue he committed the charged attempted murder with premeditation, the point is

---

[3]      The defense did not dispute, during closing argument, that defendant repeatedly stabbed W.M.  The thrust of the defense was directed instead at the allegation that the attempted murder was premeditated, with the defense contending it was "something that happened in the spur of the moment."

forfeited and meritless—once admitted, there was no such constraint on how the prosecution could argue the evidence.

Defendant's various claims of asserted misconduct by the prosecution during closing argument are all forfeited because there was no objection below to any of the aspects of the prosecution's closing that defendant now finds problematic. Defendant's attempt to avoid the consequences of the forfeiture by arguing ineffective assistance of counsel also fails. Trial counsel could have reasonably believed, as to all of the challenged remarks made by the prosecution, that any objection would be meritless because the remarks were not misconduct.

Defendant's challenge to the trial court's refusal to strike his prior "strike" crimes is unavailing because there was no abuse of discretion. The trial court's ruling accounted for all relevant factors, including the nature of defendant's offenses and his background, character, and prospects, and the court reasonably concluded striking either of defendant's two prior assault with a deadly weapon convictions would not be consistent with the "spirit" (*People v. Carmony* (2004) 33 Cal.4th 367, 377) of the Three Strikes law.

### A. Defendant's Prior Assault with a Deadly Weapon Conviction Was Properly Admitted

#### 1. Additional background

The prosecution moved to admit defendant's November 2020 conviction for assault with a deadly weapon against his sister pursuant to section 1109. That statute provides: "[I]n a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible

6

by Section 1101 if the evidence is not inadmissible pursuant to Section 352." (§ 1109, subd. (a)(1).) The trial court raised the section 1109 admissibility issue with the parties and explained it was "not sure exactly how [the prosecution] intend[ed] to prove" the victim in the prior case was defendant's sister for purposes of establishing that the prior offense involved domestic violence.[4] When the prosecution proposed relying on the transcript of defendant's preliminary hearing, the court was skeptical and the prosecution suggested an alternative: W.M. could testify to defendant's admission that his sister was the victim. W.M. later so testified outside the presence of the jury, and the trial court determined this "would be sufficient to get the 1109 in . . . ."

Then, in the presence of the jury, the trial court judicially noticed that, "on November 16, 2020, . . . defendant was convicted of a violation of Penal Code section 245(a)(1) in case BA484691, and the allegation in the information that he pled to was that . . . on or about January 19, 2020, [defendant] committed the crime of assault with a deadly weapon against Mia, last initial A, and the deadly weapon, to wit, broken glass bottle."[5] W.M. testified that victim "Mia A." was defendant's sister.

---

[4] For purposes of section 1109, "domestic violence" includes abuse perpetrated against a sibling if it occurred no more than five years prior to the charged offense. (§ 1109, subd. (d)(3); Fam. Code, § 6211, subd. (f).)

[5] When the prosecution asked the trial court in the presence of the jury to take judicial notice of the prior conviction, it "ask[ed] the court also to take judicial notice of the weapon as alleged in the complaint." There was no objection.

Subsequently, outside the presence of the jury, defense counsel complained that he believed the court was going to admit evidence of the conviction without "[m]ention of the specific weapon use[d]." Counsel opined that mentioning the weapon (the glass bottle) was "highly inflammatory" and moved for a mistrial.

The trial court denied the motion and explained the reasons for its ruling on the record: "We didn't specifically discuss the—what was going to be read from the charging document. I think what I indicated was that it was limited to what he pled to, and you couldn't go beyond what he pled to. [¶] And what he pled to was that count in the information. I will say this: Had the witness testified to these facts, they would have come in under 1109. [¶] I would have found the probative value outweighed the prejudicial value, and the similarity cuts both ways—this is under the 352 analysis—the similarity that on the one hand, it could be considered prejudicial. [¶] On the other hand, it could be probative because it's similar conduct. And given the fact, under 1109, I think we're talking about propensity evidence, and I think it would be admissible. [¶] So the question becomes whether or not the court could take judicial notice of what he did, in fact, plead to. And I think that the—I could take judicial notice of the charge that he, in fact—including the charging document because that's what he pled to. [¶] So your motion for a mistrial is denied. Should [sic] have made that clear so you weren't caught off guard with that. [¶] But—what I was referencing to the underlying facts is the prosecutor wanted me to take judicial notice of items which were in the preliminary hearing transcript, which I said was not part of the record of conviction."

8

Later, during closing argument, the prosecution made several references to the prior assault conviction the trial court admitted under section 1109. The prosecution argued "this is a guy who commits acts of domestic violence against women" and noted this was not the first time he used a bottle as a weapon. The prosecution stated, "So he committed domestic violence against his sister using a broken glass bottle. That's circumstantial evidence that he committed this crime against his girlfriend, another domestic violence victim using a broken glass bottle." At another point, the prosecution argued defendant "entered that bathroom with his weapon of choice, apparently, a glass bottle. It's what he used against his sister, and it's what he was going to use against this victim." And in rebuttal, the prosecution similarly argued, "Did he go in there with a weapon? Or is it . . . just a random gl[a]ss bottle? Oh, yeah. It was a weapon all right. A weapon used before and very recently."

### 2. *Analysis*

As we have already seen, section 1109 conditions admission of domestic violence propensity evidence on satisfaction of the standards of section 352. Section 352 makes evidence inadmissible if a court determines its "probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (§ 352.) ""Evidence is not prejudicial, as that term is used in a section 352 context, merely because it undermines the opponent's position or shores up that of the proponent. The ability to do so is what makes evidence relevant. The code speaks in terms of *undue* prejudice. Unless the dangers

9

of undue prejudice, confusion, or time consumption "'substantially outweigh'" the probative value of relevant evidence, a section 352 objection should fail.'" [Citation.]" (*People v. Thomas* (2023) 14 Cal.5th 327, 363; see also *People v. Baker* (2021) 10 Cal.5th 1044, 1089 ["In the context of Evidence Code section[ ] . . . 1109, a defendant's propensity to commit . . . domestic violence is not an extraneous factor; it is relevant to the guilt of the accused—and evidence tending to show that propensity has probative value"].)

Defendant contends the trial court erred in admitting the evidence of his prior assault on his sister with a glass bottle because the record does not affirmatively establish the trial court considered whether the prior conviction was admissible under section 352 *before* it read the charging document to the jury.[6] There was no contemporaneous objection to the absence of an on-the-record section 352 explanation when the court ruled the conviction would be admitted, however, and this is just the sort of easily cured problem that justifies application of forfeiture principles. (See, e.g., *People v. Pearson* (2013) 56 Cal.4th 393, 440; *People v. Scott* (1994) 9 Cal.4th 331, 353 ["Routine defects in the court's statement of reasons are easily prevented and corrected if called to the court's attention. As in other waiver cases, we hope to reduce the number of errors committed in the first instance and preserve the judicial resources otherwise used to correct them"]; *People v. Saunders* (1993) 5 Cal.4th 580, 590 ["""In the hurry of the trial many things may be, and are,

---

[6]     Defendant concedes, of course, that the trial court did expressly make a section 352 determination on the record in the context of ruling on his mistrial motion. Defendant does not argue that the mistrial ruling was error.

overlooked which would readily have been rectified had attention been called to them.  The law casts upon the party the duty of looking after his legal rights and of calling the judge's attention to any infringement of them"""'"].)

Defendant believes that forfeiture principles should not apply, apparently because he views the statute as imposing an obligation on courts regardless of whether an objection is made. Even if defendant is right about that (though it would seem to prove too much), he is still wrong on the substance.  "'[A] court need not expressly weigh prejudice against probative value or even expressly state that it has done so, if the record as a whole shows the court was aware of and performed its balancing functions under Evidence Code section 352.'" (*People v. Doolin* (2009) 45 Cal.4th 390, 438.)  Here, the record does show just that. The prosecution's trial brief, filed before the start of trial, reminded the court of its section 352 responsibility in connection with admitting evidence under section 1109.  The trial court was also focused on the admissibility of the prior conviction under section 1109 during trial—itself raising the issue with the parties.  These features of the record as a whole, especially but not necessarily when combined with the court's later remarks in the context of the defense request for a mistrial, suffice to show the court was aware of and discharged its section 352 function.

Apart from the unavailing challenge to the adequacy of the trial court's on-the-record remarks, defendant also contests the court's discretionary determination that the evidence of the prior conviction was admissible.  We hold there was no abuse of discretion.  (See generally *People v. Kerley* (2018) 23 Cal.App.5th 513, 535 ["In conducting the careful weighing process to determine whether propensity evidence is admissible under

11

section 352, trial courts 'must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission'"]; *People v. Rucker* (2005) 126 Cal.App.4th 1107, 1119 ["Relevant factors in determining prejudice include whether the prior acts of domestic violence were more inflammatory than the charged conduct, the possibility the jury might confuse the prior acts with the charged acts, how recent were the prior acts, and whether the defendant had already been convicted and punished for the prior offense(s)"].) The prior conviction was quite probative—the conviction was relatively recent and the nature of the prior crime (an assaultive offense committed with a glass bottle against a woman close to defendant) was quite similar—and the prior conviction was no more inflammatory than the charged attempted murder. The jury knew defendant was convicted of the prior offense (meaning there was no danger the jury would convict in this case to ensure he was punished for the past wrongdoing), and the brief presentation of the evidence did not confuse the issues or consume undue time.

Defendant argues the contrary by claiming the probative value of defendant's prior conviction was negligible because his "propensity to commit domestic violence was not at issue—there was no question of whether he truly attacked W.M., [and] the question for the jury was whether he did so with the intent to commit a premeditated and deliberate murder." That argument

is inconsistent with governing law. Although defendant ultimately contested only the allegation that the attempted murder was willful, deliberate, and premeditated, the prosecution still bore the burden of proof with respect to all elements of the charged offense. (*People v. Erskine* (2019) 7 Cal.5th 279, 296-297 ["it is the prosecutor's burden to establish every element of the crime, regardless of whether the defendant offers a defense or not"]; *People v. Thomas* (2023) 14 Cal.5th 327, 363 ["[the d]efendant cannot now claim that, because he did not contest intent or premeditation, the prosecution was barred from introducing . . . evidence" probative of those issues].)

Though the argument is never squarely presented, defendant also suggests defendant's conviction for assaulting his sister with a glass bottle should not have been admitted because "the only logical use for the admitted [section] 1109 evidence was to establish that . . . [defendant] necessarily premeditated and deliberated the attempted murder," which defendant believes to be an impermissible use. This point was not raised in the trial court and it is forfeited. It is also meritless. The text of section 1109 does not include defendant's suggested restriction on how propensity evidence may be used, and the sole case on which defendant's suggestion relies, *People v. Disa* (2016) 1 Cal.App.5th 654, does not categorically hold section 1109 evidence cannot be used to prove premeditation when relevant on that score.

In *Disa*, the Court of Appeal reversed on section 352 grounds because the prosecution elicited details of a prior conviction that were "'radically different'" from the charged offense (a stabbing committed after lying in wait, whereas the charged offense was a manual strangulation) despite a trial court admonition to refrain from eliciting those "highly inflammatory"

13

details when informing the jury of the prior conviction. (*Id.* at 669-670, 673.) The problem in *Disa* was that the jury heard unduly prejudicial information about the defendant's past premeditation that might undercut its responsibility to determine whether the charged offense was premeditated.[7] *Disa* therefore does not stand for the proposition that properly admitted section 1109 evidence can never be used to prove premeditation. *Disa*'s focus on the section 352 factors presumes that there are cases, like this one, where section 1109 evidence *can* be properly used to prove premeditation because there are similarities that make the evidence probative on that point and there are no details that, in comparison to the charged offense, would be highly inflammatory and unduly prejudicial. *Disa* therefore provides no support for an argument that the prosecution here could not argue that defendant's prior use of a bottle as a deadly weapon showed his use of the bottle as a weapon to attack W.M. was the plan, not an unconsidered spur of the moment decision.

---

[7] Specifically, the Court of Appeal's concern was that allowing the jury to hear that Disa premeditated (by lying in wait) in the prior case might improperly influence the jury to find he must have premeditated with respect to the charged offense too. (*Disa, supra,* 1 Cal.App.5th at 673 ["Given the serious risk the jury would improperly use the specific facts of defendant's past conduct to find premeditation and deliberation in the current matter, it was incumbent upon the trial court to exclude evidence of defendant's extensive planning and waiting in the prior incident"].) There is no analogous concern with the prior assault conviction in this case.

*B.*    *Defendant's Prosecutorial Misconduct Contentions Are Forfeited and Unmeritorious*

In sweeping terms, defendant accuses the prosecution of engaging in "pervasive" misconduct—asserting that the prosecution's closing argument "was riddled with multiple instances of prosecutorial misconduct in the form of invoking the passions and prejudices of the jury, from the beginning to the end."  Defendant specifically identifies (1) the prosecution's comparison of the facts of this case to a "Hollywood slasher movie," (2) the prosecution's asserted "paint[ing] of a picture for the jury through the eyes of the victim" (though he concedes the prosecution did not explicitly ask the jury to view the incident through the eyes of the victim), (3) the prosecution's claimed attempt to garner sympathy for the victim by saying evidence at trial "broke his heart," (4) the prosecution's purported plea "in essence . . . [for] the jury to 'do its job,'" and (5) the prosecution's alleged misstatement of the law on how the jury could consider evidence of voluntary intoxication.

None of the various instances of purported misconduct that defendant now identifies drew an objection below (much less a request to admonish the jury), and defendant's misconduct arguments are accordingly forfeited.  (See, e.g., *People v. Choyce* (2025) 18 Cal.5th 86, 114; *People v. Ghobrial* (2018) 5 Cal.5th 250, 289–290 [to preserve a claim of prosecutorial misconduct, a ""'defendant must make a timely and specific objection and ask the trial court to admonish the jury to disregard the improper argument'"'"].)[8]  Defendant nonetheless seeks reversal by claiming

---

[8]    Insofar as defendant requests we review his misconduct claims on the merits because it is an "important legal issue bearing on the integrity of the criminal justice system," we

the absence of any objection was ineffective assistance of counsel, but, as we next explain, that claim fails because there is an easily hypothesized reason why counsel did not object (and why there was no prejudice to defendant anyway): counsel could have appropriately believed any objection on misconduct grounds would have been meritless.  (*People v. Bradley* (2012) 208 Cal.App.4th 64, 90 ["Failure to raise a meritless objection is not ineffective assistance of counsel"]; see also *People v. Mai* (2013) 57 Cal.4th 986, 1009 ["On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation"].)

### 1. Comparison of the offense conduct to "a Hollywood slasher movie"

The prosecution began its closing argument by remarking it was "hard to imagine what the victim went through in this case. Trapped in a small bathroom to be butchered by the defendant with a piece of glass on the floor [and] stabbed 19 times in her neck, in her head, on her face.  [¶]  Truly—it honestly reminds me of something from a Hollywood slasher movie.  It's that violent[,] that[ ] bloody.  Thankfully, the victim was able to

---

decline.  Our Supreme Court has repeatedly held a contemporaneous objection and request to admonish the jury are necessary to preserve a misconduct claim for appellate review. (See, e.g., *Choyce*, *supra*, 18 Cal.5th at 113; *People v. Dworak* (2021) 11 Cal.5th 881, 909; *People v. Powell* (2018) 6 Cal.5th 136, 171.)

escape." Defendant contends these remarks gave the jury "the impression that 'emotion may reign over reason[.]' . . ." (*People v. Vance* (2010) 188 Cal.App.4th 1182, 1192, quoting *People v. Redd* (2010) 48 Cal.4th 691, 742.)

Any objection to the prosecution's "Hollywood slasher movie" reference would have been meritless. It is a fair comment on the evidence of defendant's criminal conduct, and it in no way provokes juror sympathy in a way that the evidence presented at trial alone would not. (See, e.g., *Berger v. United States* (1935) 295 U.S. 78, 88 [a prosecutor "may strike hard blows . . . [but] is not at liberty to strike foul ones"]; *People v. Nadey* (2024) 16 Cal.5th 102, 186 ["The use of 'colorful or hyperbolic language will not generally establish prosecutorial misconduct'"]; *People v. Hamilton* (2009) 45 Cal.4th 863, 928 ["A prosecutor engages in misconduct by misstating facts, but enjoys wide latitude in commenting on the evidence . . ."].)

### 2. *Argument using "you and "your"*

Later in its closing argument, the prosecution remarked, "So you've heard all the evidence. You've—you seen in a very, very quick trial, over the last two days how horrific of a case this is. What the victim went through in that bathroom is just—it's truly, truly awful. [¶] To be trapped in that space, to have the defendant on top of you wielding that blade of glass at your throat, at your face, it is a person[']s worst nightmare." Defendant argues the prosecution's use of three second person pronouns in this quoted excerpt improperly invited the jury to step into W.M.'s shoes. (*Vance, supra*, 188 Cal.App.4th at 1188 ["There is a tactic of advocacy, universally condemned across the nation, commonly known as 'The Golden Rule' argument. In its

17

criminal variation, a prosecutor invites the jury to put itself in the victim's position and imagine what the victim experienced"].)

Defendant rightly concedes, however, that the prosecution "did not explicitly ask the jury to view the incident through the eyes of the victim," and this is important. Courts do not lightly infer that a jury is likely to have understood the prosecution's argument in the most damaging sense. (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1337.) Considering the challenged remarks in context, the prosecution's simultaneous statement that defendant's stabbing was "a person[']s" worst nightmare reveals the prosecution was using "you" and "your" pronouns as a perhaps imprecise but common technique of identifying some other unspecified generic person—not the jurors themselves. We accordingly believe defense counsel had good reason to determine that making a misconduct objection to the prosecution's use of these three second person pronouns would have been meritless. (See *People v. Farnam* (2002) 28 Cal.4th 107, 168 [characterization of evidence in opening argument as "'more horrifying than your worst nightmare'" was "no more than fair comment on what [the prosecution] anticipated the evidence would show"].)

### 3. *Expression of heartbreak*

At another point during closing argument, the prosecution said the following: "[W.M.] described their relationship [i.e., her relationship with defendant] as—it had become toxic. It had become untenable. And what did . . . defendant do? He would come to where [W.M.] lived with her mom, their house, and eventually, he started breaking their windows. [¶] It's just—it broke my heart to hear she said that she went back with him

18

because she thought that's the only thing she could do to make it stop. But gosh. [¶] Look what happened when she went back with him. She was so close to being killed by him. It really was just going to be a matter of time. So single witness testimony, we would have—I could have rested this case after just hearing the words out of W.M.'s mouth. [¶] But look how much more there is on top of that. Circumstantial and direct evidence corroborating the essential facts of this case, corroborating the horrible things that happened to [W.M.]"[9] In two paragraphs of his briefing, defendant contends the prosecution's "broke my heart" remark was improper because the prosecution interjected its "own beliefs and feelings on the matter in a way that certainly impermissibly garnered the [jurors'] sympathy for the victim."

The prosecution would have done better to avoid the remark because it is irrelevant—the prosecution's reaction to the evidence doesn't matter. But defense counsel could reasonably determine it was not reversible misconduct because the expression of heartbreak was not framed as being informed by professional experience or other evidence outside the record. That distinguishes this case from the sole case cited by defendant, *People v. Mendoza* (2007) 42 Cal.4th 686, where our Supreme Court concluded the prosecution engaged in misconduct because the expression of personal beliefs ("'[t]hat choked me up when I saw that testimony'") was coupled with facts not in evidence ("'I'm an old war horse. I've been through a lot of

---

[9]    In context, the prosecution's reference to "single witness testimony" was a reference to the jury instruction providing that a single witness's testimony, if believed, can suffice to carry the prosecution's burden of proof.

19

these'"). (*Id.* at 704; see also *ibid.* ["In underscoring the egregiousness of defendant's crimes, the prosecutor emphasized his long experience as a basis for assessing [the witness's] testimony. This constituted misconduct"].) Our conclusion (irrelevant remark to be avoided, but no misconduct) is reinforced by the holding in *People v. Medina* (1995) 11 Cal.4th 694. There, our Supreme Court explained that "prosecutors should not purport to rely in jury argument on their outside experience or personal beliefs based on facts not in evidence," but the prosecutor's statement that it "'[could not] imagine anyone in our society being more violent and more dangerous'" was not misconduct because the prosecutor "did not purport to rely on his own personal experience . . . or any other facts outside the record." (*Id.* at 776.)

### 4. Exhortation to hold defendant accountable and to "do justice"

During summation the prosecution told the jury, "You now have the opportunity to say this is not okay. [¶] This is far from okay. You have the opportunity to hold [defendant] accountable for what he did to the victim, for trying to take the victim's life. I ask that you do so. I ask that you find him guilty of willful, premeditat[ed], deliberate, attempted murder." Then, during rebuttal, the prosecution urged the jury to "[d]o justice for [W.M.] What the defendant did to her was planned, thought out, and almost successfully executed on the victim and on himself. Do justice."

Defendant contends the prosecution's exhortations to hold defendant accountable and to "[d]o justice" are tantamount to prohibited appeals to the jury to "do its job" by convicting the

20

defendant. (See, e.g., *United States v. Young* (1985) 470 U.S. 1, 5-6, 18.) In our view, they are not. The prosecution's exhortation here did not tie the jury's job to returning a conviction—only to "justice." The difference is meaningful because the prosecution here did not intrude on the jury's prerogative to determine what justice requires. Moreover, our Supreme Court has held remarks comparable to those defendant complains of are not reversible misconduct. (*People v. Seaton* (2001) 26 Cal.4th 598, 663 [telling the jury "that the only just verdict was to convict [the] defendant of special circumstances murder, because it is 'the only right thing to do in this case' and because '[h]e did it'" was "fair commentary on the evidence presented"]; see also *People v. Medina* (1995) 11 Cal.4th 694, 759-760 [rejecting argument that prosecution improperly appealed to jury passions by arguing that if the law required an eyewitness in every case, almost all murderers who kill the witnesses "are going to go free" and by asking the jury to "'do the right thing, . . . do justice, not for our society, necessarily or exclusively, but for [the murder victim]'"; no reasonable probability that the prosecution's brief and isolated comments could have influenced the jury's guilt determination].)

### 5. *Purported misstatement of law*

During rebuttal argument, the prosecution emphasized defendant had effectively conceded his culpability for attempted murder and the allegation that he inflicted great bodily injury on W.M. The prosecution accordingly focused on the allegation that the attempted murder was willful, deliberate, and premeditated.

In addressing that issue, the prosecution argued: "[O]ne of the way[s] . . . the defense is trying to argue that [defendant] didn't act willfully and with premeditation is based on his

21

consumption of methamphetamine.  [¶] . . . [¶]  Well, here's what the law says about voluntary intoxication, and that's what this is.  [¶]  He voluntarily consumed an intoxicating substance, and did it affect his mental state.  You may consider evidence if any of defendant's voluntarily intoxication only in a limited way.  [¶] And that limited way is how does it affect his mental state with his intent on that morning.  You may not consider it for any other purpose.  You can disregard this evidence.  You may consider it, but you don't have to . . . ."  The prosecution then asserted there was not much information concerning the degree to which defendant was intoxicated and emphasized "[w]e know very little about the defendant's state of mind as a result of his met[h] use. So keep that in mind. . . . But what do we know about the defendant's intent?  Because that's really what this is about.  [¶] We know a lot about his intent, through his own words and through his actions because it's not every case that the defendant declares his intent for the world to hear and see, like he did in this case.  [¶]  'I'm going to kill you.'  We don't always have that, so we prove intent through the defendant's actions.  But we have both here."

Defendant argues the prosecution misstated the law when it said the jury could only consider evidence of his intoxication with respect to "his mental state with his intent on that morning."  According to defendant, this incorrectly implied the jury could not consider evidence of defendant's intoxication in deciding whether his actions were willful, deliberate, and premeditated.  (Pen. Code, § 29.4, subd. (b) ["Evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent, or, when charged with murder, whether the defendant

22

premeditated, deliberated, or harbored express malice aforethought"].)

This argument places too much weight on the prosecution's use of the term "intent," which, in context, was not used in the technical, narrow legal sense in which defendant now reads it. The challenged portion of the prosecution's argument equated defendant's "intent" with the broader concept of his "mental state" or "state of mind," which encompasses the question of deliberation and premeditation. There is accordingly no reason to believe the jury would have understood the argument to prohibit consideration of methamphetamine use on the sole contested issue being argued by both sides, i.e., whether the attempted murder was premeditated. (See e.g., *Seumanu*, *supra*, 61 Cal.4th at 1337 ["'To prevail on a claim of prosecutorial misconduct based on remarks to the jury, the defendant must show a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. [Citations.] In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements'"].) Moreover, any lack of clarity on the purposes for which the jury could have considered voluntary intoxication would have been dispelled by the clear jury instruction on that topic,[10] which the

---

[10]    The trial court gave the following instruction based on CALCRIM No. 625: "You may consider evidence, if any, of the defendant's voluntary intoxication only in a limited way. You may consider that evidence only in deciding whether the defendant acted with an intent to kill, or the defendant acted with deliberation and premeditation. [¶] A person is *voluntarily intoxicated* if he or she becomes intoxicated by willingly using any intoxicating drug, drink, or other substance knowing that it

23

jury is presumed to have followed. (*People v. Martinez* (2010) 47 Cal.4th 911, 957.)

### 6. *Cumulative error*

In light of our resolution of the individual claims of purported misconduct, defendant's cumulative error argument fails. (See, e.g., *People v. Linton* (2013) 56 Cal.4th 1146, 1197 [no "cumulative prejudicial effect of error" where the defendant's claims of error were "waived, forfeited, invited or . . . meritless"].)

### C. *Denial of Defendant's* Romero *Motion Was Not an Abuse of Discretion*
#### 1. *Additional background*

Prior to sentencing, defendant filed a *Romero* motion urging the court to strike his two prior strike convictions (a conviction for assault with a deadly weapon in 2014 when he was 20 years old and the 2020 conviction for assault with a deadly weapon against his sister) and to impose a sentence of seven years to life in prison.

Defendant submitted a declaration from his sister stating she used a bottle to cut herself while "going through a nervous breakdown" and, though she did not recall speaking with police, "[i]f [she] told them that [defendant] had attacked [her] and caused [her] injuries, [she] gave them false information." Defendant's *Romero* motion also contended he suffered from depression and chronic substance abuse, made a recent attempt

---

could produce an intoxicating effect, or willingly assuming the risk of that effect. [¶] You may not consider evidence of voluntary intoxication for any other purpose."

24

at suicide, was traumatized by sexual abuse his father committed and by his parents' "periodic abandonment," and he suffered the death of two of his children when he was 19 years old.  Defendant argued he had "never had a significant opportunity for therapy for any of the trauma he . . . experienced, nor sustained treatment of his substance abuse."[11]

At defendant's sentencing hearing, the prosecution argued "defendant is not outside the spirit of the Three-Strikes law" because he "was convicted of a second [violation of Penal Code section] 245(a)(1) almost immediately upon his release" from prison "[a]nd while he was on probation in that case, he hadn't even been sentenced yet[,] [h]e committed the act in this case, which is by far the most violent act he's committed to date."

The trial court denied defendant's *Romero* motion and explained its reasons at length:  "I can't find justification [to grant the motion] despite the depression that he suffered that justifies striking the strikes under the facts and circumstances of this case and prior cases.  [¶]  You [defense counsel] said he's fallen through the cracks, however, you know, after the first conviction, you know, he's sentenced to prison.  That was not a

---

[11] Defendant submitted a psychological assessment reflecting treatment for both substance abuse and mental health issues, though the treatment timeline is not entirely clear.  The assessment incorporates defendant's disclosures that he was prescribed drugs while in jail in 2013, he had not received medication in prison because of "prison politics," and his parole officer "was trying to get him to go to" a treatment program.  Following his prior suicide attempt, defendant reported he was hospitalized, treated in a psychiatric ward, and then spent time in a "care home" and (briefly) in a "voluntary rehabilitation program."

wake-up call.  [¶]  I'm sure at the time that they had medicated him as well.  There have been interventions in the past providing him with the medications that supposedly, according to him, make him—pretty more even keel.  [¶]  And realizing his mistakes, et cetera.  But the problem is these things all occurred before this incident even happened, and yet, we have repeated behavior.  [¶]  As to—I'm not going to revisit the validity of the prior strike or the facts or circumstances.  I don't know if the sister is being fort[h]right or she's just trying to help her brother.  [¶]  He pled to that charge, and [was] given an opportunity to deal with these underlying issues, and instead was using methamphetamine, and then committing this particular offense.  [¶]  And he is fortunate to be alive, and so is the victim fortunate to be alive.  So I just don't . . . see how I can say in good consci[ence] that he falls outside of the spirit of the Three-Strikes law.  [¶]  This is somebody who has committed multiple offenses, crimes of violence twice, once with a knife, twice with a bottle, where there were injuries inflicted, serious injuries inflicted on more than one occasion."[12]

### 2.    Analysis

"Under [Penal Code] section 1385, subdivision (a), a 'judge . . . may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed.'  'In *Romero*, [our

---

[12]     Though the trial court was unwilling to strike defendant's prior "strike" offenses, it noted the prosecution did not oppose striking the Penal Code section 12022.7, subdivision (e) great bodily injury enhancement the jury found true.  The court ruled that enhancement would be stricken.

Supreme Court] held that a trial court may strike or vacate an allegation or finding under the Three Strikes law that a defendant has previously been convicted of a serious and/or violent felony, on its own motion, "in furtherance of justice" pursuant to . . . section 1385(a).' [Citation.]" (*Carmony*, *supra*, 33 Cal.4th at 373.)

"'[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, on its own motion, "in furtherance of justice" pursuant to Penal Code section 1385(a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' [Citation.]" (*Carmony*, *supra*, 33 Cal.4th at 377.)

Defendant contends the trial court did not give due weight to the remoteness of his first strike and his age at the time, "the circumstances related to [his] prior conviction from 2020 as told by his sister . . . and whether it truly involved actual violence," his psychological and substance abuse issues, or the adequacy of the lesser but still indeterminate sentence he proposed. Our review of the trial court's *Romero* decision is for abuse of discretion (*Carmony*, *supra*, 33 Cal.4th at 375) and we hold there was none.[13]

---

[13] We individually address each of the points defendant raises for discussion purposes, but we have considered them collectively.

The asserted remoteness of defendant's first strike conviction is not a point in defendant's favor because he spent much of the intervening time in prison. Defendant's first strike conviction was in 2014, he was paroled in September 2019, his second strike conviction was in November 2020, and the offense conduct in this case occurred in July 2021. As precedent holds, "[a] prior strike conviction is not considered 'remote' for the purposes of mitigation where the defendant has not demonstrated a prolonged period of rehabilitation (a crime free life) in the interim." (*People v. Vasquez* (2021) 72 Cal.App.5th 374, 390.) The trial court's observation that defendant's first strike conviction did not serve as "a wake-up call" is fully consistent with the principle that remoteness is not significant in the absence of a change in behavior. (*Ibid.* ["Rather than simply calculating the number of years that have passed since the prior strikes, sentencing courts are to consider whether the defendant's prior strike convictions served 'as a pivot point for reforming his ways'"].)

Defendant's age at the time of his first strike conviction also is not a significant mitigating factor because defendant became more violent as he got older, not less. Defendant progressed from two convictions for assault with a deadly weapon to a conviction for willful, deliberate, and premeditated attempted murder. Less than seven years passed between defendant's first strike conviction and the offense conduct in this case, and defendant "did not add maturity to age." (*People v. Williams* (1998) 17 Cal.4th 148, 163.)

Defendant's contention that the trial court failed to consider the circumstances of his 2020 conviction also lacks merit. Defendant suggests the trial court ignored the terms of

his plea, which, according to defendant, demonstrate "it was not treated as a serious offense at the time of the criminal proceedings," as well his sister's declaration stating the assault never happened. The trial court was within its rights, however, to question defendant's sister's credibility and to believe her apparent refusal to cooperate in the earlier prosecution made it difficult to infer anything about the circumstances of the offense from its resolution.

Defendant's history of substance abuse, mental health issues, and past trauma also do not establish he falls outside the spirit of the Three Strikes law. Although the trial court did not recite the particulars of defendant's difficult childhood, it was not required to do so. (*People v. Brugman* (2021) 62 Cal.App.5th 608, 637 ["'The trial court is not required to state reasons for declining to exercise its discretion under section 1385 [citations], and "is presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary"'"].) The trial court did note, however, that past "interventions" had failed to curb defendant's violent behavior, and the possibility that defendant might benefit from additional efforts does not demonstrate he falls outside the spirit of the Three Strikes law.[14]

---

[14] In his reply brief, defendant contends the trial court expressed misplaced confidence that defendant was "medicated" during his time in prison. Defendant contends the trial court's remark that "[I'm] sure at the time that they had medicated him as well" is contradicted by defendant's report that he was not placed on medication due to "prison politics." Rather than demonstrating the trial court was unaware of defendant's self-reported medical history, this remark is plausibly read as expressing skepticism about this history. In any case, the trial court correctly noted that defendant *had* received treatment prior

29

Defendant's contention that the trial court did not consider its authority to strike one or both of his prior strike convictions and impose a sentence of seven years to life or 14 years to life conflicts with the presumption that the trial court considered all relevant factors.  (*Brugman*, *supra*, 62 Cal.App.5th at 637.)  The trial court was well aware of other available sentences—defendant proposed a sentence of seven years to life both in his *Romero* motion and at the hearing—and it was not required to explain why it deemed these insufficient.  (*Ibid.*)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BAKER, Acting P. J.

We concur:


MOOR, J.                                            KIM (D.), J.

---

to the offense conduct in this case: he was diagnosed with anxiety and major depression in 2013 and placed on Wellbutrin and BuSpar while "in TTCF [presumably, Twin Towers Correctional Facility] on another matter."